Order of County Court reversed; decision of the commissioners affirmed, with fifty dollars costs and disbursements.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE GRAMERCY COMPANY, Relator, *v.* JAMES A. ROBERTS, as Comptroller of the State of New York. Respondent.

*Corporation — franchise tax — burden of proof — stockholders renting rooms in an apartment house — valuation.*

Where a proceeding is taken to review an assessment made against a corporation for the purposes of the franchise tax, imposed by chapter 542 of the Laws of 1880, and the several acts amendatory thereof and supplemental thereto, the burden rests upon the relator to show that the decision of the Comptroller is erroneous.

In a proceeding of this nature it appeared that the relator was incorporated under chapter 40 of the Laws of 1848, with a paid-up capital of $165,000, invested solely in an apartment house in New York city; that it purchased the building with its capital, subject to a mortgage for $225,000, which was subsequently reduced to $205,000; that when the company was organized leases for the life of the corporation were made of eighteen apartments in the building to eighteen stockholders, who contracted to pay in certain proportions any deficit in the annual expenses of conducting the corporate business; that eight other apartments were reserved by the corporation and had been rented to persons not stockholders; that the annual expenses of the company were between $30,000 and $35,000, while the income from apartments leased to non-stockholders was only $12,000, and that the deficit of about $20,000 was apportioned among the holders of the eighteen leases.

There was evidence, however, of the value of the eighteen apartments which showed that if all the apartments were rented to strangers the property would produce at least $40,000 a year.

A witness testified that in fixing the value of an apartment the shares of stock held by the occupant were considered, and the effect of his evidence was that the lease was virtually attached to the stock held by the lessee.   It did not appear that any of the shares of stock had ever been sold.

*Held*, that the Comptroller was justified in assuming that the capital stock should be valued at $165,000, and that the corporation had failed to show any impairment of the capital stock.

CERTIORARI issued out of the Supreme Court and attested on the 25th day of April, 1895, directed to James A. Roberts, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular the proceedings and actions, and the evidence, documents, records and papers before him, touching or concerning the valuation for assessment or taxation of the capital stock of the relator used within the State of New York, or in anywise in respect thereto.

*Fisher A. Baker*, for the relator.

*T. E. Hancock, Attorney-General*, and *G. D. B. Hasbrouck, Deputy Attorney-General*, for the respondent.

PUTNAM, J.:

This is a proceeding to review the determination of the Comptroller in assessing a franchise tax against relator for the four years ending November 1, 1894, under the provisions of chapter 542 of the Laws of 1880, and the several acts amendatory thereof and supplemental thereto.

The relator is a domestic corporation, incorporated under the Manufacturing Act of 1848, with a paid-up capital of $165,000, solely invested in an apartment house in Gramercy Park, New York city. The company purchased the building with said capital, subject to a mortgage of $225,000, since reduced to $205,000.

At the organization of the company leases in perpetuity, or during the existence of the corporation, were made to its eighteen stockholders of eighteen apartments in the building. The lessees contracted to pay in certain proportions the deficit in the annual expenses of conducting the corporate business. The trustees fixed the amount of the assessment in proportion to the number of shares of stock owned by those to whom the leases were made.

148   PEOPLE ex rel. GRAMERCY CO. v. ROBERTS.

THIRD DEPARTMENT, DECEMBER TERM, 1895.   [Vol. 91.

Eight apartments were reserved by the relator, and have been from time to time rented to others not stockholders. The expenses of the company were interest on the mortgage, taxes, insurance, water rents, elevator service, and an engineer's and janitor's services, and amounted to between $30,000 and $35,000 annually. The gross income from the apartments leased to those not stockholders was about $12,000, leaving an annual deficit of about $20,000. This deficit is apportioned among and paid by the holders of the eighteen perpetual leases, as before stated, in proportion to the amount of stock held by them respectively. There are three classes. In the third class the assessment was based on forty-five shares of stock; in the second on eighty shares, and in the first on a number above eighty shares. The papers submitted do not contain a copy of the articles of association of the corporation or a statement of the provisions of the leases, but I infer that a sale of stock necessarily accompanied a transfer of a lease.

It is not denied that relator is liable to pay a franchise tax under the act of 1880 on the cash value of its capital stock. But it is urged that the evidence produced before the Comptroller on the rehearing made it appear that the relator's capital stock had no cash value whatever.

In a proceeding to review an assessment against a corporation under the act of 1880 the burden rests upon the relator to show the error of the Comptroller, if any. (*People ex rel. Western Electric Co.* v. *Campbell*, 80 Hun, 466; 145 N. Y. 587; *People ex rel. Amer. Contracting & Dredging Co.* v. *Wemple*, 129 id. 565; *People ex rel. Roebling's Sons' Co.* v. *Wemple*, 138 id. 583.)

The question, therefore, to be determined by us is, does the relator show error on the part of the Comptroller in his valuation of its capital stock?

He clearly had some basis for his valuation of such stock. It was shown that the whole amount of relator's capital, $165,000, had been paid up and invested by it in the Gramercy Park apartment house which the corporation purchased for said sum subject to a mortgage of $225,000, since reduced to $205,000. The fact that the corporate capital of $165,000 was recently invested by the company in real estate yet owned by it was sufficient in the first instance to justify the action of the Comptroller. He had at least

some grounds for not believing that the capital stock of relator of $165,000 so invested in real estate was, as claimed by it, of no value whatever.

The corporation raised by the subscriptions of its stockholders $165,000, for which sum it purchased the apartment house in Gramercy Park, issuing to its subscribers $165,000 in stock. The stockholders, so to speak, are the corporation; they own the corporate stock, control the corporate action, are entitled to the profits resulting from the corporate business, and ultimately, on the dissolution of the company, to so much of the fund created by their subscriptions as remains unimpaired and is not liable for corporate debts.

Relator on the rehearing before the Comptroller took on itself the burden of showing that its capital stock — $165,000 — recently raised and invested in real estate, was of no value, or of less value than the amount at which it was assessed by the Comptroller. As none of the stock had been sold, the question was not as to its market value, but its intrinsic value. In the absence of other satisfactory evidence, the sum raised by the stockholders, and paid over to the corporation, and by it invested in real estate, was some evidence of the value of the capital stock issued for the amount thus raised.

Had relator on the rehearing made it appear that the Gramercy Park apartment house, for which it had paid $165,000, was worth nothing, or a less sum than the amount so paid, that fact would have tended to show that the Comptroller had not reached a correct conclusion. But no such fact was shown. On the contrary, the evidence rather indicated that the interest of the corporation in the house in question was worth more than when it first made the investment. It had reduced the mortgage on the premises, subject to which it purchased, $20,000. For all that appears in the case, should the company elect to dissolve and sell the premises — which it could do, as the leases are only made to continue during the corporate existence — the corporation on such sale might receive a sum equal to the whole amount of the capital stock issued; and as it is not claimed that it has incurred debts, such sum could be divided among the stockholders.

Again, it appeared that the annual expenses of carrying on relator's business was about $32,000. If it had been shown that the

**150** PEOPLE ex rel. GRAMERCY CO. *v.* ROBERTS.

THIRD DEPARTMENT, DECEMBER TERM, 1895. [Vol. 91.

rental value of the rooms in the Gramercy Park apartment house did not exceed $32,000, or very slightly exceeded that sum, such fact would have tended to show an error in the calculation of the Comptroller. It might well have been inferred therefrom that the corporation had made a poor investment, and that in consequence thereof the value of its capital stock was not equal to the amount invested in the building. But relator did not show any such state of facts. According to the statement of the witness, Peabody, of the eighteen apartments leased to stockholders, six or seven were of the first class and worth $2,000 each per year — one of them worth $2,500 ; six were of the second class and worth $1,600 each per year ; and five were of the third class and worth $900 each per year. The eight apartments rented to those not stockholders brought $12,000 per year. The real rental value of the apartments of the Gramercy Park apartment house, as far as the evidence discloses, therefore, was as follows :

| | |
|---|---:|
| For 8 apartments | $12,000 |
| " 7 apartments, first class, $2,000 each | 14,000 |
| " 6 apartments, second class, $1,600 each | 9,600 |
| " 5 apartments, third class, $900 each | 4,500 |
| Total | $40,100 |
| Annual expenses were | 32,500 |

Leaving as the balance of the value of the rents over the expenses ................................................ $7,600 a sum equal to a fair dividend on the capital stock of the corporation.

The evidence taken before the Comptroller, therefore, tends to show that if the corporation, instead of leasing to its stockholders, should lease to others at the real rental value of the apartments, it would derive from rents a fair dividend on its capital. But, instead of so leasing, the stockholders take the apartments, and thus by a reduced rent obtain the benefit of their stock investment. As may be inferred from the evidence, they are called upon to pay $20,000 rental for apartments worth $27,500.

The witness Peabody, in giving the rental value of the several apartments, said : " We have set off, as involving each one, a simultaneous assumption of a certain number of shares of capital, which fixed

the assessment *pro rata* as nearly as we could estimate its value then." Again he says: "My stock is worth less than nothing, if I may express it that way. * * * It is utterly unsaleable, because such a thing as a sale of stock has never taken place unless except the necessary transfer on the stock books in connection with the sale of the lease, or, as we call it, the sale of an apartment." I do not think this evidence avails relator. It appears that a lease of an apartment is made to the several stockholders and goes with each stockholder's stock. Had the witness testified that his stock, together with his lease of an apartment, was of no value, the case might have been different. As the corporation conducts its business, a lease of an apartment is, so to speak, appurtenant to the stock held by the several stockholders. In estimating the present value of the capital stock of relator, therefore, it is necessary to take into consideration the value of the several leases that go with the stock.

On the whole we reach the conclusion that the Comptroller was justified in the first instance in assuming that the value of the capital stock of relator, $165,000, which represented a building for which it had paid that sum, was the sum so paid; that the corporation has failed to show any impairment of its capital stock so represented by said building, or that its stockholders do not receive a benefit on account of their stock in the way of reduced rentals, or that the determination of the Comptroller in any regard was erroneous.

The decision of the Comptroller should be affirmed and the certiorari quashed, with fifty dollars costs and disbursements.

